IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **07-cv-1362-JLK-CBS** (consolidated with 07-cv-2508)

**GLEN DROEGEMUELLER,** individually and as representative plaintiff on behalf of all others similarly situated,

          Plaintiff,

v.

**PETROLEUM DEVELOPMENT CORPORATION,** a Nevada corporation

          Defendant

_____

Civil Action No. 07-cv-2508

**TED AMSBAUGH, DONALD L. KRETSCH**
and **BARBARA H. KRETSCH,**
Co-Trustees of the Kretsch Living Trust, and
**BUDDY BAKER**, individually and on behalf of all others similarly situated,

          Plaintiffs,

v.

**PETROLEUM DEVELOPMENT CORPORATION,**

          Defendant

This Filing relates to BOTH cases

---

## FINAL JUDGMENT AND DISMISSAL WITH PREJUDICE

---

THIS MATTER comes before the Court upon "Plaintiffs' Unopposed Motion for Final Approval of Class Settlement." The Court, being fully advised of the premises of the Motion, FINDS:

A.    On October 6, 2008, Plaintiffs filed a Motion for Preliminary Approval of Class Settlement (the "Preliminary Motion") seeking preliminary approval of a settlement of certain claims existing between Petroleum Development Corporation ("PDC") and a Settlement Class of

individuals and entities defined as follows:

> All individuals and entities, private or public, to whom PDC has paid or as of the Effective Date is paying Royalties (either directly or indirectly through DCP Midstream, LP or DCP's predecessors or successors, and either on its own behalf or on behalf of Other Working Interest Owners) under Leases on Natural Gas and Liquids produced, billed or sold since April 1, 2001 from wells located in the Subject Counties (namely Adams, Broomfield, Larimer, Weld and Yuma Counties, Colorado), according to the business records maintained by PDC.  The Settlement Class excludes persons receiving Royalties pursuant to Leases that expressly authorize the deduction of Post-Wellhead Expenses (including the Leases listed on <u>Exhibit D</u> to the Settlement Agreement); PDC and its predecessors, subsidiaries, and affiliates; the federal government; legally recognized Indian tribes; any persons or entities that own a working interest in any well in the Subject Counties operated by PDC; and any person who currently serves as a judge in these Consolidated Cases and their spouse. Certain members of the Settlement Class have interests in different types of Leases and are included in the Settlement Class only as to their interests in Leases that are not Excluded Leases.

B.      Attached as Exhibit "1" to the Preliminary Motion is a Settlement Agreement (the "Agreement") describing the claims that are being settled (defined as the "Settled Claims") and setting forth the terms of the Parties' settlement.  The Agreement is attached hereto as Exhibit 1 and its terms, including the definitions, are incorporated into this Final Judgment and Dismissal with Prejudice (the "Final Judgment") as if fully set forth herein.  The Agreement and Final Judgment shall be referred to collectively herein as the "Settlement."

C.      After a hearing on the Parties' Preliminary Motion, this Court entered an Order dated October 10, 2008 (the

"Preliminary Order") preliminarily approving the Settlement and directing that notice of the proposed Settlement be mailed to the Settlement Class and published.  The Court also set a hearing for February 23, 2009 to determine whether the proposed Settlement should be approved as fair, reasonable and adequate.

D.      In accordance with the Court's Preliminary Order, PDC caused to be mailed to potential members of the Settlement Class (for whom PDC had addresses available from its accounting records) a notice (the "Mailed Notice") in the form approved by the Court in the Preliminary Order; and PDC caused a notice ("Publication Notice") in the form approved by the Court in the Preliminary Order to be published in a Sunday edition of the *Denver Post* and in a Sunday edition of *The Greeley Tribune*. Attached as Exhibit 2 to the Memorandum in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Settlement is the Affidavit of Kahalla C. Thompson which provides additional information concerning the mailing of notice (the "Thompson Affidavit").  Attached to the Memorandum in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Settlement as Exhibit 5 is a copy of the Publication Notice which was published in the *Denver Post* and the *Greeley Tribune*.  The Court finds that the Settlement Notice provided to potential

members of the Settlement Class constituted the best and most practicable notice under the circumstances and included individual notice to all members of the Settlement Class who could be identified by reasonable effort, thereby complying fully with due process and Rule 23 of the Federal Rules of Civil Procedure.

E.      On December 22, 2008, PDC filed the Unopposed Motion by Defendant to Continue Hearing on Final Settlement Approval for Purpose of Providing Notice in Compliance with the Class Action Fairness Act.  On December 22, 2008, the Court entered the Order Granting Defendant's Unopposed Motion to Continue Hearing on Final Settlement Approval for Purpose of Providing Notice in Compliance with Class Action Fairness Act (the "CAFA Compliance Order").  As part of the CAFA Compliance Order, the Court rescheduled the hearing for final approval of the Agreement and of the class settlement to April 7, 2009.

F.      Pursuant to paragraph 3 of the CAFA Compliance Order, on December 23, 2008, PDC caused to be mailed to the appropriate federal and state officials the materials required to be submitted by the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq*.  The actions taken to comply with the CAFA Compliance Order's notice requirements are more particularly described in the

Thompson Affidavit.  Accordingly, the Court finds that the notice requirements of the Class Action Fairness Act have been satisfied.

G.      In addition, as required by paragraph 5 of the CAFA Compliance Order, a copy of that order was posted on the class website, www.pdcsettlement.com.  Pursuant to paragraph 6 of the CAFA Compliance Order, a copy of that order was mailed on March 30, 2009, by first-class mail and by Express Mail, to Teddy Joe Kerns, who submitted an objection to the amount of the proposed class representative incentive awards but not to the Settlement.

H.      Neither the Court nor the parties have received any comments relating to the agreement or the proposed settlement from any governmental official or entity who received notice pursuant to the CAFA Compliance Order.  The Court and the parties have not been advised by any governmental official or entity who received notice pursuant to the CAFA Compliance Order that she, he or it intended to appear at the hearing for final approval of the Agreement and of the class settlement.

I.      On April 7, 2009, the Court held a hearing on the proposed Settlement, at which time all interested persons were given an opportunity to be heard.  Furthermore, the Court has read and considered all submissions in connection with the Settlement.

Having done so, the Court has determined that approval of the Settlement will bestow a substantial economic benefit on the Settlement Class, result in substantial savings in time and money to the litigants and the Court and will further the interests of justice, and that the Settlement is the product of good faith arm's length negotiations between the Parties under the supervision of an impartial mediator, former Judge Richard W. Dana.

NOW, THEREFORE, GOOD CAUSE APPEARING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      The Agreement, including the terms defined therein, is incorporated herein.

2.      The Court has jurisdiction over the subject matter of this litigation and all parties to this litigation, including all members of the Settlement Class.  The Court finds, based on the record before it, that all of the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure have been satisfied for purposes of certifying a settlement class, to wit:

a.      The Settlement Class is so numerous that joinder of all members is impracticable;

b.      There are questions of law or fact common to the Settlement Class;

c.      The claims or defenses of Plaintiffs are typical of the

claims or defenses of the Settlement Class;

d.      Plaintiffs will fairly and adequately protect the interests of

the Settlement Class;

e.      The questions of law or fact common to the members of the

Settlement Class predominate over any questions affecting

only individual members; and

f.      A class action is superior to other available methods for the

fair and efficient settlement of the controversy.

The Court makes no finding on whether this case, if litigated as a class action,

would present intractable case management problems.

3.      The certified Settlement Class is defined for purposes of the

Agreement and this Final Judgment as set forth in Paragraph A above.  Plaintiffs

are appointed as the class representatives for the Settlement Class, and Plaintiffs'

counsel are appointed as counsel for the Settlement Class ("Class Counsel").

4.      The Settlement was made in good faith and its terms are fair,

reasonable and adequate as to the Settlement Class.  Therefore, the Settlement is

approved in all respects, and shall be binding upon, and inure to the benefit of, all

members of the Settlement Class.

5.      The Settlement Class Excluded Entities are not bound by either the

Agreement or the Final Judgment.  The following persons and entities are

Settlement Class Excluded Entities:  Anadarko Petroleum Corporation;

Kimberly D. Bowman; Keri D. Kennedy; Judy Shively; Kevin Shively; and

Rebecca Shively.  The Settlement Class Excluded Entities may pursue their own

individual remedies, if any, as to any of the Settled Claims.

6. <u>Mutual Releases, Covenants and Warranties</u>.

a.<u>Release by PDC</u>.  Upon the occurrence of the Effective Date and

the release of the Settlement Funds from the Escrow Account pursuant to

paragraph 9 below, PDC, for itself and its agents, officers, directors, shareholders,

parents, employees, consultants, subsidiaries, affiliates, insurers, successors and

assigns, fully and forever releases and discharges the Settlement Class Members,

and each of them, as well as the Class Members' Additional Released Parties,

from any and all Settled Claims, except for rights and obligations created by this

Agreement and for appropriate adjustments made on the basis of production,

severance, ad valorem, conservation, or any other applicable taxes.

b. <u>Release by Settlement Class Members</u>.  Upon the

occurrence of the Effective Date and the release of the Settlement Funds from the

Escrow Account pursuant to paragraph 9 below, the Settlement Class Members,

and each of them, for themselves and their respective heirs, agents, officers,

directors, shareholders, employees, consultants, joint venturers, partners,

members, legal representatives, successors and assigns, fully and forever release

and discharge PDC and all of its predecessors (including predecessors to its

interests in the Leases), subsidiaries (including Unioil, Inc.) and affiliates

(including partnerships in which PDC is the general partner) plus PDC's

Additional Released Parties, as well as the Other Working Interest Owners and

anyone else responsible for making Royalty payments, from any and all Settled

Claims, except for the rights and obligations created by this Agreement and for

appropriate adjustments made on the basis of production, severance, ad valorem,

conservation, or any other applicable taxes.

        c.<u>No Release of Non-Parties</u>.  Nothing herein shall operate or be

construed to release any claims the Parties may have against any person or entity

who is not a Party hereto, a Class Members' Additional Released Party,

predecessor of PDC (including predecessors to its interests in the Leases),

subsidiary of PDC (including Unioil, Inc.) or affiliate of PDC (including a

partnership in which PDC is the general partner), a PDC's Additional Released

Party, or an Other Working Interest Owner, as those terms are defined in the

Agreement or this Final Judgment.

    7.    This action and any and all claims, actions or causes of action

alleged by Plaintiffs in the Consolidated Cases, individually and on behalf of the

Settlement Class Members against PDC, are dismissed on the merits and with

prejudice as to PDC and the Other Working Interest Owners.

    8.    Neither this Final Judgment, the Agreement nor any document

referred to herein nor any action taken pursuant to—or to carry out—the

Settlement, including without limitation PDC's acquiescence to the certification

of the Settlement Class, may be used as an admission by or against PDC of any

fact, claim, assertion, matter, contention, fault, culpability, obligation,

wrongdoing or liability whatsoever.  The Agreement and its exhibits may be filed

in the Consolidated Cases or related litigation as evidence of the Parties'

settlement, or in any subsequent action against or by Settlement Class Members

or PDC to support a defense of *res judicata*, collateral estoppel, release, or other

theory of claim preclusion, issue preclusion or similar defense.

     9.     Allocation of the Settlement Funds shall proceed as follows:

     a.The Plan of Administration attached as Exhibit E to the

Settlement Agreement, including the plans for allocation and distribution set forth

therein, is hereby approved and shall be implemented by using the best

reasonably available data and using the most practicable method under the

circumstances.

     b.     The Parties acknowledge that, by operation of

subparagraph 5(a)(i) of the Agreement, the amount of the Initial Settlement

Payment has been reduced by $2,076.53, which is the aggregate amount of the

Initial Settlement Payment attributable under the Plan of Allocation to the

Settlement Class Excluded Entities identified in Paragraph 5 above.

     c.PDC is not liable for the allocation of the Initial Settlement

Payment or any other Settlement Funds beyond the act of distributing the

payments in accordance with the terms of this Settlement.  Any omissions from,

errors in, or challenges to the allocation shall in no way whatsoever result in an

increase of the Settlement Funds paid by PDC.

     10.     <u>Future Royalty Calculation Method.</u>  For the production of Natural

Gas and Liquids occurring within the Subject Counties through and including

June 30, 2009, PDC may continue to deduct one hundred percent (100%) of Post-Wellhead Expenses actually incurred, directly or indirectly, by PDC from Royalty payments made to Settlement Class Members.  For the production of Natural Gas and Liquids occurring within the Subject Counties on and after July 1, 2009 or on the first day of the calendar month following the end of the Transition Period, whichever is later, and continuing for the respective lives of the Leases (including for wells drilled on the Leases on, before, or after January 1, 2008), PDC (and its successors) in the ordinary course of business shall, when calculating Royalties due to the Settlement Class Members (and their successors), apply the following provisions relative to its deduction of Post-Wellhead Expenses:

a. Fifty percent (50%) deduction.  When calculating Royalties due to the Settlement Class Members and their successors pursuant to the Leases, PDC will cease deducting one hundred percent of Post-Wellhead Expenses and will, instead, deduct only fifty percent (50%) of the Post-Wellhead Expenses actually incurred, directly or indirectly, by PDC.  A further description of how this calculation will be made is provided below.

i. Post-Wellhead Services Paid for in Money. When any provider of Post-Wellhead Services charges monies, directly or indirectly, to PDC for such services, PDC shall include and only deduct 50% of the monies paid or to be paid by PDC to the provider of Post-Wellhead Services when calculating Royalties due to the Settlement Class Members.  For example, if Company A charges PDC $10,000 for gathering services, then PDC will only

deduct $5,000 for those gathering services in calculating Royalties on the production to which the gathering services pertain.

        ii.    <u>Percentage-of-Proceeds Arrangements</u>.  When any provider of Post-Wellhead Services retains a percentage of the provider's sale proceeds as compensation for Post-Wellhead Services and returns a percentage of the provider's sale proceeds to PDC, then PDC will, in addition to paying Royalties on the sale proceeds returned to PDC, also pay Royalties on 50% of the amount of sale proceeds retained by the provider of such Post-Wellhead Services. The amount of sale proceeds retained by the provider shall be measured and accounted for at the same unit price used by the provider to determine PDC's sale proceeds for Residue Gas at the Mainline Transmission Inlet and for Natural Gas Liquids at the Natural Gas Liquids Pipeline or Storage Tank. This type of arrangement includes wellhead percentage-of-proceeds sale contracts under which another person or entity takes title to PDC's Natural Gas and Liquids at or near the wellhead, gathers and processes the Natural Gas and Liquids, sells the resulting Residue Gas and Natural Gas Liquids, retains a percentage of the sale proceeds, and pays a percentage of the sale proceeds to PDC. For example, if Company B gathers and processes Natural Gas and Liquids and retains 10% of the sale proceeds thereof and pays 90% of the sale proceeds to PDC, then PDC will, in addition to paying Royalties on 90% of the sale proceeds it receives, also pay Royalties on 50% of the sale proceeds retained by Company B, *i.e.*, pay Royalties on a total of 95% of the sale proceeds.

iii.     <u>Arrangements Involving Retained Volumes</u>.  When

any provider of Post-Wellhead Services receives or retains Residue Gas and/or

Natural Gas Liquids volumes in exchange for Post-Wellhead Services, then PDC

will pay additional Royalties based on 50% of the value of the Residue Gas and

Natural Gas Liquids received or retained by the provider.  The value of the

Residue Gas and Natural Gas Liquids received or retained by the provider will be

calculated by multiplying the same unit price received by PDC for the remaining

Residue Gas at the Mainline Transmission Inlet and for the remaining Natural

Gas Liquids at the Natural Gas Liquids Pipeline or Storage Tank times the

volume of Residue Gas (MMBtu) and Natural Gas Liquids (gallons) received or

retained by the service provider.  For example, if Company C provides gathering

and processing services to PDC and, as a gathering and processing fee, retains

twenty-six percent (26%) of the Residue Gas and Natural Gas Liquids volumes

attributable to the gas gathered and processed by Company C and returns seventy-

four percent (74%) of the Residue Gas and Natural Gas Liquids volumes to PDC,

then PDC will, in addition to paying royalties on the Residue Gas and Natural

Gas Liquids returned to PDC, also pay royalties on 50% of the value of the

Residue Gas and Natural Gas Liquids received or retained by Company C,

determined based upon the same unit prices (per MMBtu and per gallon) received

by PDC for the 74% of Residue Gas and Natural Gas Liquids volumes returned to

PDC.

iv.     <u>Fuel and Other Lost Volumes</u>. Post-Wellhead

Expenses incurred by PDC shall include Fuel and Other Lost Volumes. PDC shall

pay Royalties on 50% of the value of the Fuel and Other Lost Volumes measured

and accounted for by the average price paid to PDC for Residue Gas at the

Mainline Transmission Inlet per MMBtu during that same period.

   v. <u>Services Provided by PDC</u>.  If Post-Wellhead

Services are provided by PDC itself, then PDC may deduct 50% of PDC's actual,

direct costs for such services or facilities, all of which costs must be reasonable.

Such costs shall not include any overhead, profit, or return on investment.

   vi. <u>Other Arrangements</u>. The Parties recognize that

there are a variety of arrangements that have been made, or may be made in the

future, for the provision of Post-Wellhead Services.  Regardless of the particular

arrangement, when calculating Royalties due to the Settlement Class Members

and their successors, PDC will implement such Royalty accounting procedures

and methodologies as may be necessary to ensure that PDC deducts only 50% of

the Post-Wellhead Expenses it incurs, directly or indirectly, including (a)

deducting only 50% of any monies charged, directly or indirectly, by providers of

Post-Wellhead Services, (b) paying additional Royalties based on 50% of the

value of all Natural Gas and Liquids retained, used, consumed, lost, or

unaccounted for by providers of Post-Wellhead Services, and (c) paying

additional Royalties on Fuel and Other Lost Volumes as calculated pursuant to

subparagraph (iv).  It is agreed that PDC's contracts and other arrangements for

obtaining Post-Wellhead Services existing on or before the Effective Date, so

long as they remain in effect, properly may be used when calculating Royalties

due to members of the Settlement Class, subject to the limitation on the portion of

Post-Wellhead Expenses that may be deducted when calculating Royalties for

production occurring on and after July 1, 2009, as provided for in this paragraph

10 and during the Transition Period as provided in subparagraph 5(b).

vii.     <u>Application</u>.  Subparagraph (i) through (vi) apply as

appropriate to PDC's Post-Wellhead Expenses, including by applying these

provisions to various portions (*e.g.*, fee-based portions and percentage of

proceeds portions) of PDC's contracts for Post-Wellhead Services.

b.     <u>Check Stubs</u>.  PDC shall separately disclose in or on the

check stub that accompanies the payment of Royalties calculated pursuant to this

paragraph 10 and made by PDC directly, (i) the total deduction taken and/or the

additional amount of Royalties owed pursuant to this paragraph 10, as calculated

above and (ii) the portion of that deduction and/or additional Royalties that is

based upon (a) gathering and processing charges and (b) fuel.  PDC shall use

reasonable efforts to arrange for DCP to make the same disclosures for Royalty

payments that DCP makes on behalf of PDC.  PDC shall also each year during the

month of March send a letter to each Settlement Class Member (or their

successors) explaining how Royalties for the preceding calendar year have been

calculated under this paragraph 10.  It is expressly agreed that by complying with

the provisions of this paragraph 10(b), PDC shall be deemed to be in full

compliance with C.R.S. § 34-60-118.5, as it currently exists and relates to the

disclosure of deductions taken.  The check stub may contain a footnote or other statement indicating that the Royalties have been calculated as provided in the Final Judgment and referring to and incorporating by reference the letter referred to in this paragraph 10(b).

    c. <u>No Other Modification of Leases</u>.  The revised method of calculating Royalties set forth in this paragraph 10 does not affect the provisions of the Leases, if any, relating to any rights a Settlement Class Member may have to the use, including free use, of gas produced from his Lease, the payment or nonpayment of Royalties on any gas used by PDC on the lease for well operations, or any other provision of the Leases except to the extent necessary to conform the Royalty payments due to the Settlement Class Members to the calculation methods set forth in this paragraph 10.  This Agreement also has no impact on the respective responsibilities of the Parties for production, severance, ad valorem, conservation, or any other applicable taxes.

    d.   <u>Impact on Division Orders and Other Instruments</u>.  This paragraph 10 describes the allocation of Post-Wellhead Expenses between PDC and the Settlement Class Members.  Neither the Agreement nor the Final Judgment supersedes or nullifies any division order, pooling agreement or unitization agreement now in existence or executed hereafter, except to the extent that the terms of such instruments conflict with the Agreement, in  which case the terms of the Agreement shall prevail.

    e. <u>Working Interest Royalty Payments.</u>  In addition to Royalties

calculated and paid by PDC in satisfaction of its own Royalty obligations under

the Leases, the method for calculating and paying Royalties set forth in the

Agreement, including the method set forth in this paragraph 10, also shall apply

to PDC's calculation and payment of the Royalties that it distributes on behalf of

Other Working Interest Owners with working interests in the Leases.  If any

Other Working Interest Owner commences paying Royalties on its own share of

production from any well subject to a Lease, and it fails to comply with the

provisions of this paragraph 10, nothing in this Settlement shall preclude

Settlement Class Members from pursuing any remedy against such Other

Working Interest Owner with respect to its payment of Royalties.  In the event

any Other Working Interest Owner on whose behalf PDC pays Royalties pursuant

to this paragraph 10 commences paying Royalties on its own share of production

from any well subject to a Lease, to the extent such Other Working Interest

Owner complies with the provisions of this paragraph 10 and provides reporting

consistent with subparagraph 10(b), such Other Working Interest Owner shall be

entitled to the same benefits under subparagraph 11(b) of the Agreement as PDC

receives and, in such event, the Agreement shall be deemed to be a separate

agreement as to PDC and each such working interest owner and a default

hereunder by one working interest owner shall not be deemed to be a default by

any other working interest owner.

   f. <u>Limits on Deductions</u>.  PDC shall not make any deductions for

(i) expenses incurred prior to the Initial Measurement Point; (ii) any

administrative or other costs PDC incurs in making arrangements for Post-Wellhead Services; (iii) any operations or facilities that are used to produce Natural Gas and Liquids and/or deliver the Natural Gas and Liquids to the inlet of a gathering system, including well facilities, flow lines, field separators, field dehydrators, and all other operations, activities, and equipment on the lease; or (iv) fees, costs, or expenses incurred in making arrangements for the sale or marketing of Natural Gas and Liquids.  PDC shall make no deductions for Post-Wellhead Expenses it currently incurs with respect to wells located in Yuma County and for which it currently does not make deductions.

       g.     <u>Downstream Sales</u>.  If Residue Gas or Natural Gas Liquids are sold downstream of the Mainline Transmission Inlet and Natural Gas Liquids Pipeline or Storage Tank, respectively, any costs incurred by PDC after the Residue Gas enters the Mainline Transmission Inlet or the Natural Gas Liquids enter the Natural Gas Liquids Pipeline or Storage Tank shall not be treated as or deemed to be Post-Wellhead Expenses, and nothing in this Agreement shall preclude the deduction of such costs in their entirety from Royalty payments to the Settlement Class Members.  It is agreed that PDC may deduct when calculating Royalties the entire reasonable costs actually incurred by PDC to fractionate Natural Gas Liquids into separate, distinct products (*e.g.*, into propane, butane, natural gasoline) and/or to transport Natural Gas Liquids to a location outside of the Subject Counties for fractionation and/or sale.

       h.     <u>Proportionate Share</u>.  Nothing herein shall be construed to

provide, imply or suggest that the Post-Wellhead Expenses and other costs PDC

is allowed under this Agreement to deduct when calculating Royalties will be

borne in their entirety by the Settlement Class Members.  Instead, it is understood

that PDC's deductions will be calculated on an 8/8ths basis for any given well and

that a Settlement Class Member's share of the deductions allowed hereunder will

only be a proportionate share based on his decimal revenue interest in the

production from the well.

      11.     This Final Judgment, including the provisions of paragraphs 6 and

10, affects the interests in real property  (including but not limited to the lands

identified on the list attached hereto as Exhibit 2) held by the Settlement Class

Members (including without limitation the individuals and entities identified on

the list attached hereto as Exhibit 3), shall run with the land, and shall be binding

upon and inure to the benefit of the Parties and their respective agents, officers,

directors, shareholders, employees, consultants, joint venturers, partners,

members, heirs, legal representatives, successors and assigns, with respect to both

the current interests owned by PDC and Settlement Class Members and any

additional interest that either PDC or Settlement Class Members may acquire

under the Leases.  PDC may file with the Clerk and Recorder of each of the

Subject Counties this Final Judgment and any other documents that may be

necessary or appropriate to establish that the terms of this Final Judgment and the

Agreement burden the Settlement Class Members' interests and PDC's interests

in the Leases.  One or more of the parties may move this Court to supplement this

Final Judgment with a list of any Settlement Class Members identified in addition to those listed on Exhibit 3.

12.     The Agreement and Final Judgment shall apply only to the undivided interest owned by PDC in each Lease or any interest subsequently acquired by PDC or a Settlement Class Member under each Lease.  Neither the Agreement nor the Final Judgment shall be interpreted or construed to amend any lease in which both PDC and any Settlement Class Member did not own an interest on or before October 6, 2008.  Neither the Final Judgment nor the Agreement shall be interpreted or construed as preventing or limiting PDC's ability, at its sole discretion and without notice to the Settlement Class Members, to enter into new contracts for Post-Wellhead Services, including sales, gathering, transportation, processing or marketing arrangements relating to the Leases, provided, however, that the obligations of PDC under this Final Judgment will continue.  The Agreement and Final Judgment shall apply to the interests now owned or hereafter acquired by PDC, and Other Working Interest Owners who elect to comply with the Agreement as provided in subparagraph 10(e) of this Final Judgment, and the Settlement Class Members, in the Leases or production attributable to the leases by virtue of any unit participating areas, communitized areas or pooled areas in which such Leases are now or hereafter included, in whole or in part.  Nothing in the Agreement or Final Judgment shall operate or be construed as a cross-conveyance or pooling of the Leases which in any manner affects the right of any separate Settlement Class Member to deal with their

separate property interests in the Leases as their sole and separate property without regard to the rights or interests of any other separate Settlement Class Member.

13.     With respect to the Settlement Class Members, PDC shall institute the Future Royalty Calculation Method beginning with Royalties paid for production occurring within the Subject Counties on and after July 1, 2009 or the first day of the first calendar month following the end of the Transition Period, whichever is later.  The Initial Settlement Amount includes an amount for production occurring through the production month of June 2009.  Until the Future Royalty Calculation is instituted by PDC, PDC shall be entitled to continue its current method of calculating and paying Royalties and shall make such prior period adjustments as may be appropriate in the ordinary course of business.  PDC will also pay Royalties based on the Future Royalty Calculation Method on production occurring during the Transition Period by, in addition to the Royalties paid to the Settlement Class Members during the Transition Period, paying to each of the Settlement Class Members (and their successors) entitled to receive Royalties on production occurring on and after July 1, 2009 the following Transition Period Settlement Payments:

a.If the Effective Date precedes July 1, 2009, there shall be no Transition Period Settlement Payments.

b.     If the Effective Date occurs after July 1, 2009, PDC shall, no later than 90 days after the end of the Transition Period, pay the difference

between the amount owed under the Future Royalty Calculation Method and the amount paid by PDC to the Settlement Class Members (and/or their successors) in Royalties for Natural Gas and Liquids produced within the Subject Counties between July 1, 2009 and the end of the Transition Period, inclusive.

14.     The Court has, by separate order, granted Class Counsel's "Motion for an Award of Attorneys' Fees and Expenses and for an Incentive Award Payment to Class Representatives." The amount of attorneys' fees and Litigation Expenses awarded to Class Counsel shall be distributed to Class Counsel from the Initial Settlement Payment Escrow Account pursuant to the terms of the Escrow Agreement effective October 31, 2008 and within seven calendar days after the date of this Final Judgment. If this Final Judgment is reversed on appeal, Lead Class Counsel shall be jointly obligated to refund to PDC the amount of attorneys' fees and Litigation Expenses paid, with 8% interest compounded annually, within 15 days of the date of such reversal.  If the amount of attorneys' fees or Litigation Expenses is reduced on appeal, Class Counsel and their law firms shall be jointly obligated to refund to the Escrow Account the difference between the amount paid to them pursuant to this paragraph 13 and the amount ultimately awarded, with 8% interest compounded annually, within 30 days of the date of the order or decision reducing the amount of fees or expenses awarded. PDC shall have no liability to the Settlement Class, the Settlement Class Members, or Class Counsel to pay any funds in addition to the Settlement Funds paid.

15.     The Court reserves jurisdiction over this matter, the Parties, and all counsel herein, without affecting the finality of this Final Judgment, over (a) implementing, administering and enforcing this Settlement and any award or distribution from the Settlement Funds; (b) disposition of the Settlement Funds; and (c) other matters related or ancillary to the foregoing.

16.     Nothing set forth in this Final Judgment shall be construed to modify or limit the terms of the Agreement, but rather, the Agreement and Final Judgment are to be construed together as one Settlement between the Parties.

17.     The Settlement and this Final Judgment shall have no *res judicata*, collateral estoppel, or other preclusive effect as to any claims other than the Settled Claims.

Dated April 7, 2009.                    **s/John L. Kane**
                                        SENIOR U.S. DISTRICT JUDGE